# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### DELTA DIVISION

ANTHONY GLASS, on behalf of himself
And other similarly situated individuals                                    PLAINTIFF

V.                                   No. 2:22-CV-00091-BSM-JTR

NEIL BYRD, Sheriff,
Phillips County, Arkansas                                                    DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction

On May 24, 2022, Plaintiff Anthony Glass ("Glass"), an inmate in the Phillips County Detention Center ("PCDC"), filed a Class Action § 1983 Complaint against the Phillips County Sheriff, Neil Byrd ("Byrd"), in both his individual and official

capacity.[1] *Doc. 1*. In his Complaint, Glass seeks to represent a Class composed of "all persons who are, or will be, incarcerated in the [PCDC]," and alleges that the PCDC has instituted polices that restrict prisoners from: (1) meeting with lawyers over the weekend; (2) sending legal mail; and (3) receiving legal publications. *Id. at 1-3*. The Complaint alleges these restrictions violated his and all putative Class members' constitutional rights to legal counsel, legal mail, and legal resources, as protected by the Sixth Amendment, Fourteenth Amendment, and the Arkansas Constitution. *Id. at 3-4*.[2]

On July 22, 2022, Defendant Byrd filed a Motion for Summary Judgment, Brief in Support, and Statement of Undisputed Facts arguing that Glass's Complaint must be dismissed, without prejudice, because he failed to exhaust his administrative remedies on any of his claims *before* he initiated this action. *Docs. 9-11*. Byrd's Motion for Summary Judgment is supported by the sworn Affidavit of PCDC Jail Commander Jeffery Heagwood ("Heagwood"), a copy of the PCDC Detainee Handbook, and the PCDC Kiosk Transaction Reports for Glass. *Docs. 10 & 10-1*.

On August 23, 2022, Glass filed a Response in Opposition to the Motion and a separate Response to Byrd's Statement of Undisputed Facts. *Docs. 14 & 15*.

---

[1] Glass is now incarcerated in the Pine Bluff Unit of the Arkansas Division of Correction ("ADC"). *See* ADC INMATE SEARCH, https://apps.ark.org/inmate_info/search.php. (last visited Aug. 24, 2022).

[2] Glass is represented by attorney Luther Sutter ("Mr. Sutter").

For the reasons stated below, Byrd's Motion for Summary Judgment should be granted and this suit be dismissed, without prejudice, based on Glass's failure to exhaust administrative remedies.

## II. Discussion

### A. Pursuant to the PLRA, Glass Was Required to Complete the PCDC Grievance Process *Before* He Filed This Action

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust their available administrative remedies *before* filing a § 1983 action: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock,* 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 88-91 (2006).

The PLRA also requires prisoners to: (1) fully and properly exhaust their available administrative remedies as to each claim in the complaint; and (2) complete the exhaustion process *before* filing an action in federal court. *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,* 548 U.S. at 93-95; *Burns v. Eaton,* 752 F.3d 1136,

1141-42 (8th Cir. 2014); *Johnson v. Jones,* 340 F.3d 624, 626-28 (8th Cir. 2003).

Importantly, "it is the prison's requirements, and not the PLRA, that define the

boundaries of proper exhaustion." *Jones,* 549 U.S. at 218; *see also Woodford*, 548

U.S. at 90 (explaining that administrative exhaustion "means using all steps that the

agency holds out, and doing so properly so that the agency addresses the issues on

the merits"). Thus, Glass was required to satisfy the PCDC's exhaustion process on

each of his claims *before* he initiated this § 1983 action.

## B. Undisputed Material Facts:

1. Glass was incarcerated in the PCDC from April 4, 2022 until early June,

2022.[3] *See Heagwood Declaration*, *Doc. 10-1 at ¶ 3*; *Doc. 14-1 at 2*.

2. On May 24, 2022, Glass filed his Class Action Complaint, alleging that

the PCDC violated his constitutional rights by restricting his ability to communicate

with his attorney,[4] restricting his access to a proper law library, and censoring his

legal mail. *Doc. 1.*

---

[3] It is unclear from the record whether Glass was released from the PCDC on June 2, 2022 or June 6, 2022. *Doc. 10-1 at ¶ 3*; *Doc. 14-1 at 2*. Those dates, however, are *not* material to deciding the merits of Byrd's Motion for Summary Judgment.

[4] Glass's Complaint does not state the exact date Mr. Sutter was not permitted to meet with him. *Doc. 1*. However, the Complaint, which was filed on May 24, 2022, states that the visit was "*last month*, on the weekend," (*Id*. at 3 (emphasis added)), which implies Mr. Sutter's initial visit occurred in April of 2022.

Glass's Response to Byrd's Motion for Summary Judgment, further states that:

[Mr. Sutter] appeared on a Saturday to meet with [Glass] and was advised that the Sheriff's policy did not allow weekend visits. A few weeks later, counsel was finally able to meet with [Glass] in the [PCDC]. Plaintiff was then transferred to the ADC on June 2, 2022.

*Doc. 14 at 1.*

4

3.  The PCDC has a Grievance Policy, which is explained in the PCDC Detainee Handbook. *Id. at ¶ 4*; *see also*, *PCDC Detainee Handbook*, *Doc. 10-1 at 29*. This PCDC Grievance Policy states:

> If you have a complaint or concern with the operation of the Detention Center or with staff, you have the right to ask that it be considered and resolved. You can informally talk to staff or submit an[] Inmate Request Form about the grievance; and if not resolved, you may file an Inmate Grievance Form.
>
> Staff are not permitted to interfere with the reporting of a grievance or make any reprisal against you for filing your grievance. Only one (1) grievance may be submitted on each Inmate Grievance Form and only an individual inmate, not a group or a representative of a group of inmates, may file a grievance. The grievance system is not to be misused.
>
> Filing a grievance is an attempt to resolve legitimate concerns. You file a grievance by completing an Inmate Grievance Form. If you cannot write or do not understand how to complete an Inmate Grievance Form, you may state your grievance to a staff member or another inmate, who completes the Inmate Grievance Form for you.
>
> You submit a grievance form to the Grievance Officer even when the complaint/problem is with another staff member. Any Grievance that involves another staff member shall immediately be delivered to the Jail Commander.
>
> A written response to an Inmate Grievance Form may take up to 14 days depending on the nature of the grievance. Each inmate of the Detention Center is entitled to initiate grievance procedures regardless of his administrative, disciplinary or classification status within the Detention Center.
>
> Frivolous or repetitive grievances will not be processed by the Grievance Officer and will be returned to you.

*Doc. 10-1 at 29.*

4. PCDC inmates are permitted to file grievances and complaints in writing or by using any of the electronic kiosks located throughout the PCDC. *Id. at ¶ 5*; *Doc. 15 at ¶ 3.*

5. All PCDC inmates are afforded access to the kiosks, regardless of their incarceration status. *Id.*

6. Prisoners can access the *PCDC Detainee Handbook* using the PCDC's electronic kiosks. Each time a prisoner uses a kiosk, he is prompted to acknowledge that he has access to the *PCDC Detainee Handbook*. *Doc. 10-1 at ¶ 5.*

7. Heagwood, the PCDC Jail Commander, examined Glass's PCDC Electronic Kiosk Transaction Report and "confirmed that Mr. Glass used the PCDC kiosks to order items from the PCDC commissary." *Id. at 6.*

8. However, according to Heagwood, during the time Glass was incarcerated in the PCDC, he did *not* file *any* grievances or other complaints. Thus, *before* he initiated this action, Glass did *not* file any grievance related to the claims asserted in his Complaint. *Doc. 10-1 at ¶ 6*; *Doc. 15 at 4.*

**C. Glass Failed to Exhaust His Available Administrative Remedies On Any of His Claims**

In his Response, Glass *admits* that he did *not* file any grievance related to the claims in this action. *Doc. 15 at ¶ 4.* However, he argues he should be "excused" from his exhaustion obligation because the PCDC grievance process was unavailable

to him.[5] Specifically, Glass argues that: (1) because he "was no longer incarcerated in the [PCDC]," *at the time his Complaint was served on Byrd*, the PCDC grievance was no longer accessible to him; (2) the grievance policy allowed PCDC officials 14 days to respond to grievances, but Glass "was transferred out of the jail before the 14 day period expired;" and (3) "there is no admissible evidence on whether Glass even knew a grievance procedure existed." *Doc. 14 at 4-6*.

The first two arguments demonstrate a fundamental misunderstanding of the PLRA's exhaustion requirement. As previously discussed, the PLRA requires a prisoner to fully exhaust his available administrative remedies *before* initiating a § 1983 action. 42 U.S.C. § 1997e(a); *Jones,* 549 U.S. at 211, 219-20, 223-24; *Woodford,* 548 U.S. at 93-95. Here, it is undisputed that Glass filed his § 1983 Complaint, on May 24, 2022, despite *never filing any grievance with the PCDC beforehand*. Because Glass unquestionably did *not* exhaust his available administrative remedies *before filing this action*, it is wholly irrelevant whether he

---

[5] *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*.") (Emphasis added).

In *Ross v. Blake*, 578 U.S. 632, 648 (2016), the Court explained three limited circumstances where administrative remedies may be unavailable: (1) when the process cannot be completed because it is a dead end and not capable of completion; (2) when there is a legitimate issue with navigating the process because it is so confusing that no reasonable person can use it; and (3) the procedure is not available because the inmate is thwarted through misrepresentation or intimidation. *Id.* at 643-44. Thus, an inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 642. "Accordingly, an inmate is required to exhaust those … grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.*

had access to the PCDC grievance process at "the time Byrd was served with the Complaint," or any other time *after* he initiated this action. Similarly, because Glass *never filed a grievance*, the PCDC's 14-day grievance response period was never triggered, which makes that argument nothing more than a red herring.

Finally, Glass argues, that "there is no admissible evidence on whether Glass even knew a grievance procedure existed[, because t]he Affidavit submitted [by Defendant Byrd] is conclusory and self-serving." *Doc. 14 at 6*. Heagwood's Affidavit is not conclusory and states facts that Glass himself *admits*: He did not access the PCDC grievance procedure to exhaust his available administrative remedies on any of his claims before he initiated this action.

Byrd's Motion for Summary Judgment on the issue of exhaustion is properly supported by Heagwood's sworn Affidavit (*Doc. 10-1 at 1-3*); the PCDC Detainee Handbook (*Doc. 10-1 at 4-38*); and Glass's PCDC Kiosk Transaction Reports (*Doc. 10-1 at 39-44*). *See* Fed. R. Civ. P. 56. Heagwood's Affidavit, which he signed under penalty of perjury, states the following:

> 4.    *P[C]DC has adopted and implemented jail policies which are contained in a Detainee Handbook which is provided to every inmate at P[C]DC. The Detainee Handbook contains a "Grievance Policy" which advises every inmate that they have the right to file a grievance for any "complaint or concern with the operation of the Detention Center or with staff."* P[C]DC Detainee Handbook, p. 26. I have attached a copy of the entire P[C]DC Detainee Handbook to this affidavit as Exhibit A-1.
> 5.    During the time Mr. Glass was incarcerated at P[C]DC, inmates could file grievances under the Grievance Policy by

completing a written form or by utilizing the electronic kiosks which are located in each dorm and pod in the P[C]DC, further, regardless of the status or location of incarceration of any inmate, each inmate is afforded an opportunity each day to access an electronic kiosk where they can submit a grievance or complaint. *The entire Detainee Handbook is available on the electronic kiosks and each time an inmate utilizes a kiosk they are prompted to acknowledge that they have access to the Detainee Handbook.*

   6. Anthony Glass, the Plaintiff in the captioned case, did not file a grievance during his incarceration at this facility. I have confirmed this by examining all of his transactions or usage of the P[C]DC kiosks as well as checking for any record of a grievance in P[C]DC records and by inquiring of P[C]DC staff. *I examined Mr. Glass's electronic kiosk transaction report and confirmed that Mr. Glass used the kiosk to order items from the P[C]DC commissary but did not make any grievance reports or any other complaints about conditions at the P[C]DC.* I have attached a copy of the Kiosk Transaction Report for Mr. Glass covering the duration of his incarceration at P[C]DC to this affidavit as Exhibit A-2.

*Doc. 10-1 at 1-2* (emphasis added).

After Defendant Byrd filed his Motion for Summary Judgment and supporting documents, the Court entered an Order informing Glass of his right to file a Response and specifically advising him that, "[a]t the summary judgment stage, [he could not] rest upon mere allegations and, instead, *must meet proof with proof.*" *Doc. 12 at 1* (emphasis added). He was also informed that his Response to Byrd's Motion for Summary Judgment "should include his legal arguments, *as well as affidavits, prison records, or other evidence* establishing that there is a genuine issue of material fact that must be resolved at a hearing or trial." *Id.* (Emphasis added).

Glass's Response did not dispute any of the facts in Heagwood's sworn Affidavit. Thus, because Glass did *not* meet proof with proof, and *admitted* in his Response that, while he was a prisoner in the PCDC, he failed to file any grievances raising any of the complaints he now seeks to pursue in this action, it is too late for Glass to advance the conclusory and factually unsupported argument that the grievance policy, which was clearly explained and made available to him on the kiosk he used to purchase commissary items, was somehow "unavailable."

Accordingly, based on the undisputed facts in the record, while Glass was a prisoner in the PCDC, he failed to exhaust his available administrative remedies on any of his claims *before* he initiated this action on May 24, 2022.[6]

---

[6] Although not specifically argued by Glass, the Court notes that the PCDC grievance policy's use of "may" instead of "must" or "shall" is also insufficient to make the grievance process unavailable, as the discretionary language did not make the process "so confusing that … no reasonably prisoner could use [it]." *Ross*, 578 U.S. at 644. As the Court stated in *Ross*: "When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that *the inmate should err on the side of exhaustion.*" *Id.* (Emphasis added). In contrast, to be "unavailable" the grievance process must be so confusing that it is "'essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands." *Id.*

Here, the PCDC process was not "essentially unknowable," rather it used discretionary language instructing inmates that they "may" file a grievance, instead of using mandatory language. In this situation, Glass should have "erred on the side of exhaustion" and completed the PCDC grievance process, as required by the PLRA, before filing his 1983 Complaint. *Id.*; *see Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005) (affirming dismissal of prisoners' § 1983 claims, for failure to exhaust, where prisoners did not file grievances, rejecting argument that grievances were not necessary because policy used discretionary "may" language, stating "[a]n inmate's subjective believe that the procedures were not applicable to [their] grievances does not matter and is not determinative," finding the grievance procedure was available to prisoners and prison officials did not thwart or otherwise make it impossible for them to file grievances).

## III. Conclusion

IT IS THEREFORE RECOMMENDED THAT Defendant Byrd's Motion for Summary Judgment be GRANTED and Glass's Complaint be DISMISSED, WITHOUT PREJUDICE, for failure to exhaust.

DATED this 26th day of September, 2022.

_____
UNITED STATES MAGISTRATE JUDGE